UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA E. CROSBY, | ) Case No. CV 08-1215 JC |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND |
| v. | ) ORDER OF REMAND |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| Defendant. | ) |

## I. SUMMARY

On February 22, 2008, plaintiff Francesca E. Crosby ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; March 12, 2008 Case Management Order, ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand because the Administrative Law Judge ("ALJ") failed properly to consider the opinion of a treating physician.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 31, 2008, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 57-65). Plaintiff asserted that she became disabled on October 25, 2002, due to fibromyalgia, cervical spine impairment, lumbar spine impairment, osteoarthritis, and depression. (AR 57, 62). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert, and a vocational expert on March 12, 2007. (AR 176-221).

On July 27, 2007, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 15-21). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: fibromyalgia and irritable bowel syndrome (AR 17); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 17-18); (3) plaintiff retained the residual functional capacity to perform light work (AR 18);[1] (4) plaintiff could perform her past relevant work (AR 20); and (5) plaintiff's statements regarding her limitations were not totally credible. (AR 20).

The Appeals Council denied plaintiff's application for review. (AR 4-6).

---

[1] "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. 20 C.F.R. 404.1567(b), 416.967(b).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work?[2] If so, the claimant is not disabled. If not, proceed to step five.

---

[2] Residual functional capacity is "what [one] can still do despite [one's] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

|     |     |     |
| --- | --- | --- |
| 1   | (5) | Does the claimant's residual functional capacity, when |
| 2   |     | considered with the claimant's age, education, and work |
| 3   |     | experience, allow her to adjust to other work that exists in |
| 4   |     | significant numbers in the national economy?  If so, the |
| 5   |     | claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///
///
///
///

## IV. DISCUSSION

### A. A Remand Is Appropriate to Enable the ALJ Properly to Consider the Treating Physician's Opinions Regarding a Plaintiff's Limitations

#### 1. Applicable Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing

---

[3] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

reasons. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. <u>Id.</u> (citation and internal quotations omitted); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); <u>Magallanes</u>, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion -- court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." <u>Id.</u> "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

### 2. Pertinent Facts

Dr. Khurana, a rheumatologist, treated plaintiff from March 9, 2004 through December 9, 2005. (AR 148-66). On March 9, 2004, plaintiff presented with symptoms of generalized arthralgias, myalgias, and fatigue. (AR 154). She complained of pain in her left hip, lower back, and left lower extremity. (AR 154). Dr. Khurana observed paraspinal muscle tenderness in the upper and lower back with "a number of trigger points," crepitation in the knees, metatarsalgia in the feet, tenderness in the left greater trochanter area, and "somewhat diminished" grip strength. (AR 154). Dr. Khurana diagnosed plaintiff with possible Sjogren's syndrome. (AR 154). The doctor further added that the physical findings and plaintiff's history were suggestive of systemic lupus erythematosus. (AR 154).
///

Subsequent treatment notes from Dr. Khurana between January 7, 2005 and December 7, 2005, reflect that plaintiff suffered from tenderness in the neck, upper and lower back, hips, and rotator cuffs. (AR 156-59). Dr. Khurana recommended trigger point injections and prescribed anti-inflammatories (*i.e.*, Feldene, Plaquenil), pain relievers (*i.e.*, Neurontin), and sleep medication (*i.e.*, Restoril, Elavil). (AR 155-59).

On December 7, 2005, Dr. Khurana diagnosed plaintiff with bilateral trochanteric bursitis, rule out lupus, rule out rheumatoid arthritis, and rule out Sjogren's Syndrome. (AR 159).

On December 9, 2005, Dr. Khurana completed a Fibromyalgia Impairment Questionnaire, wherein the doctor noted that plaintiff met the American Rheumatological criteria for fibromyalgia.[4] (AR 148). The doctor commented that plaintiff suffered from constant pain and fatigue. (AR 153). Dr. Khurana opined that plaintiff: (1) could sit for two hours in an eight-hour workday; (2) could stand/walk for zero to one hour in an eight-hour workday; (3) required the option to alternate between sitting and standing every twenty minutes; (4) could lift up to ten pounds occasionally, but could never list more than ten pounds; (5) could carry up to five pounds occasionally, but could never carry more than five pounds; (6) could not tolerate even "low stress" jobs; (7) would miss more than three days of work every month; (8) could not work in an environment where she would be exposed to wetness, extreme temperatures, loud noises, fumes, humidity, or heights; and (9) could not push, pull, kneel, bend, or stoop. (AR 151-53).

On July 26, 2006, Dr. Concoff saw plaintiff for a rheumatology consultation. (AR 168). He reported that plaintiff had "classic symptoms for fibromyalgia," including diffused body pain, cognitive dysfunction, and irritable bowel-like symptoms. (AR 169). On November 9, 2006, Dr. Concoff saw

---

[4] Dr. Khurana also reported that plaintiff was diagnosed with irritable bowel syndrome and chronic fatigue. (AR 148).

1  plaintiff on a follow-up visit. (AR 171). The doctor reported, under the heading
2  "subjective," that plaintiff had "improved significantly" with medication (*i.e.*,
3  Elavil) and water walking, was worse in the winter, and had recently had an
4  exacerbation of left hip bursitis. (AR 171). Dr. Concoff further reported, under
5  the heading "physical examination," that plaintiff had multiple tender points above
6  and below the diaphragm on both sides of her body – worst at the left greater
7  trochanter – and that the range of motion was maintained to her joints without
8  evidence of synovitis. (AR 171).

9  Dr. David Huntley, the medical expert who testified at the hearing, opined
10 that plaintiff: (1) could lift ten to twenty pounds occasionally, but not
11 repetitively;[5] (2) could carry five to ten pounds occasionally; (3) could sit for two
12 hours in an eight-hour workday; and (4) could stand for four to six hours in an
13 eight-hour workday. (AR 207-08).

14 The ALJ determined that plaintiff: (1) could lift ten pounds frequently and
15 twenty pounds occasionally, but not repetitively;[6] (2) could carry five to ten
16 pounds occasionally; (3) could sit for two hours in an eight-hour workday; and
17 (4) could stand or walk for four to six hours in an eight-hour workday. (AR 20).

18 **3. Analysis**

19 Plaintiff contends that the ALJ improperly rejected the opinion of treating
20 physician Dr. Khurana. (Plaintiff's Motion at 11). Defendant argues that the ALJ
21 properly rejected Dr. Khurana's opinion based on "the later treating evidence from
22 Andrew Concoff, M.D., and Dr. Huntley's medical expert testimony."

---

[5]The ALJ incorrectly stated that Dr. Huntley opined that plaintiff frequently could lift ten pounds. (AR 19).

[6]As the ALJ otherwise appears to have adopted Dr. Huntley's assessment, the ALJ's conclusion that plaintiff could frequently lift ten pounds appears to be predicated upon her incorrect summary of Dr. Huntley's testimony. See supra note 5. The ALJ should clarify this matter on remand as the ability to perform "light work" requires the ability frequently to lift/carry up to ten pounds. See supra note 1.

8

(Defendant's Motion at 4) (citation omitted). The Court agrees with plaintiff's contention that the ALJ failed properly to consider Dr. Khurana's opinion.

Although the ALJ summarized the findings of Dr. Concoff and Dr. Huntley, the ALJ did not explain why Dr. Khurana's opinion as to plaintiff's fibromyalgia-related limitations should have been given less weight than those of the aforementioned physicians. This Court is "constrained to review the reasons the ALJ asserts." See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ's failure to provide any reasons, let alone "specific and legitimate," for rejecting Dr. Khurana's opinion regarding plaintiff's limitations warrants a remand for further consideration and clarification.[7] Lester, 81 F.3d at 830; see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (an ALJ satisfies the requirement of providing "specific and legitimate" reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings") (citing Magallanes, 881 F.2d at 751).

Although the ALJ might nonetheless have chosen to adopt Dr. Huntley's opinion over that of Dr. Khurana, this Court cannot so conclude on this record. On remand, the Administration should (i) evaluate Dr. Khurana's opinion regarding the limitations assertedly arising from plaintiff's fibromyalgia;

---

[7] The ALJ did provide reasons for rejecting Dr. Khurana's diagnoses of possible Sjogren's syndrome and possible lupus. (AR 20). Specifically, the ALJ noted:

> As for the opinion evidence, the undersign finds that although pertinent progress notes dated January 26, 2004, indicated "possible lupus" as a diagnosis, the record contains no supporting objective evidence to substantiate a diagnosis of lupus (Exhibit 4F) [AR 125-47]. The opinions of Dr. Khurana at Exhibit 5F [AR 148-59] are not supported by the evidence of record, and specifically, medical expert testimony indicates that there are no laboratory tests and no double strand of DNA to support a diagnosis of either Sjogren's Syndrome or lupus.

(AR 20). However, as discussed herein, the ALJ provided no reasons for rejecting Dr. Khurana's opinion regarding plaintiff's limitations arising from fibromyalgia.

9

(ii) explain the weight given to such opinion, if any; and (iii) if such opinion is rejected, state the reason(s) therefor.

## V. CONCLUSION[8]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[9]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 9, 2008

                                      /s/
                                  Honorable Jacqueline Chooljian
                                  UNITED STATES MAGISTRATE JUDGE

---

[8] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[9] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).